# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JESUS IVAN VAZQUEZ-RAMIREZ

**08CR 388**

**MAGISTRATE JUDGE ASHMAN**

CRIMINAL COMPLAINT

CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May 13, 2008 in Cook county, in the Northern District of Illinois defendant(s),

knowingly and intentionally possessed with the intent to distribute a controlled substance, namely in excess of 1 kilogram of substances containing heroin, a Schedule I Narcotic Drug Controlled Substance,

in violation of Title 21 United States Code, Section(s) 841(a)(1).

I further state that I am a(n) Special Agent, Drug Enforcement Administration and that this complaint is based on the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

May 14, 2008           at          Chicago, Illinois
Date                                City and State

_____
Signature of Judicial Officer

MARTIN C. ASHMAN, U.S. Magistrate Judge
Name & Title of Judicial Officer

**FILED**

MAY 14 2008  TC

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

STATE OF ILLINOIS     )
                      )  SS
COUNTY OF COOK        )

## AFFIDAVIT

I, Donald C. Wood, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, and have been so employed for over 10 years. Since September 2001, I have been assigned to the DEA Chicago Field Division. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, and 848. I have been involved in various types of investigations, in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking, and investigations involving the laundering and concealing of proceeds of drug trafficking. I received specialized training in the enforcement of laws concerning the activities of narcotics traffickers. Immediately prior to becoming a Special Agent with the DEA, I was a criminal investigator for the Cook County State's Attorney's Office and was so employed for approximately four years.

2. The information set forth in this Affidavit is based upon my participation in this investigation, interviews of witnesses, information obtained from other law enforcement officers, and my experience and training. The recitation of facts contained in this Affidavit is not meant to be a complete narrative of all that has occurred in connection with this investigation, but is only a summary of facts necessary to show probable cause that Jesus Ivan Vazquez-Ramirez possessed with intent to distribute a controlled substance, namely, in excess of one kilogram of substances containing heroin, Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Investigation

3.      On or about May 13, 2008, at approximately 2:35 p.m., DEA Agents went to Carlos Beltran's residence located at South Harvey Street, Berwyn, Illinois, in order to conduct an investigative interview of Beltran and any others that resided at the aforementioned residence. Upon arriving at the residence, Agents knocked and rang the bell for the residence. During that time, agents observed a Hispanic male, subsequently identified as Jesus Ivan Vazquez-Ramirez, look out the second story window. Agents then identified themselves to Vazquez-Ramirez as police officers and asked him to answer the front door.

4.      At approximately 2:45 p.m., Vazquez-Ramirez answered the door while talking on his cellular telephone. At that time, Vazquez-Ramirez related to Agents that he spoke little English and that the owner of the residence was on his cellular telephone in order to interpret. At that time, Vazquez-Ramirez handed your Affiant his cellular telephone. The person on Vazquez-Ramirez's cellular telephone identified himself as Carlos Beltran. Beltran related to your Affiant that he resides at the residence and that he (Beltran) was currently at work. Beltran further related that he had no illegal contraband in his residence and that he would allow agents to search his residence when he returned home. Beltran informed your Affiant that it would take him approximately an hour to get from work to his residence. Beltran also informed your Affiant that he lives in the building and that Vazquez-Ramirez rented the second floor apartment.

5.      Your Affiant requested that Beltran ask Vazquez-Ramirez in Spanish if he (Vazquez-Ramirez) would allow agents to search his up-stairs apartment while agents waited for Beltran. Your Affiant then gave Vazquez-Ramirez the cellular telephone. Vazquez-Ramirez then had a short conversation in Spanish before Vazquez-Ramirez returned the telephone to your Affiant. At that

time, Beltran related to your Affiant that both Vazquez-Ramirez and Beltran would grant agents consent to search their residences but that Vazquez-Ramirez and Beltran both insisted that Beltran be present for the search.

6. While waiting for Beltran, Vazquez-Ramirez remained outside in the front of the residence with Agents. At or around approximately 3:00 pm, agents observed a male individual, later identified as Beltran, access his backyard from the alley and approach the rear of his residence while utilizing his cellular telephone. At that time, agents established surveillance on the front and rear of the residence. During that time, Agents also searched garbage cans located in the alley for the residence located at the residence. The garbage cans that DEA Agents searched were labeled with the number for the residence. Agents found and seized what appeared to be multi-kilogram packaging material. The packaging materials found in the garbage cans later field tested positive for the presence of cocaine. Also during that time, Agents in the front of the residence heard footsteps coming from the second floor apartment and then heard the door to the second floor apartment shut.

7. At approximately 3:20 p.m., Agents noted that Vazquez-Ramirez was utilizing his cellular telephone speaking to an individual in Spanish. Later that day, your Affiant seized the cell phones of both Vazquez-Ramirez and Beltran and determined that the two telephones were in contact at approximately 3:20 p.m.

8. At approximately 3:30 p.m., Agents stopped Beltran as he exited the rear door to his residence. Agents noted that Beltran was shaking, sweating profusely, and appeared to be extremely nervous. Agents then conducted a security pat down of Beltran's outer clothing. As a result, Agents noted that Beltran had two large bundles of United States Currency that bulged from his front pockets. Beltran related to Agents that he had just arrived at the residence and he was going to notify Agents that he had arrived. Beltran related to Agents that he never entered the residence even though

Agents saw him walk toward the house approximately 30 minutes prior and had caught him exiting the residence.

9. At approximately 3:35 p.m., Agents conducted an interview with Vazquez-Ramirez. A DEA Agent fluent in Spanish was called to interpret the conversation. As a result of the interview, Vazquez-Ramirez gave verbal and written consent to allow Agents to search his apartment located on the second floor of his residence, as well as the garage and his vehicle that was parked within the garage. The consent form was written in Spanish. Agents then in fact searched the second floor of the residence and found two large plastic storage bins in an empty room of Vazquez-Ramirez's apartment. One storage bin was filled with large amounts of United States Currency ("USC") that was packaged and wrapped in blocks; two duffel bags filled with large amounts of USC packaged and wrapped in blocks; nine (9) kilograms of suspected heroin wrapped in the same packaging as the money; and a notebook that, based on my experience and training, appeared to be a drug ledger. Agents later field tested three of the nine kilograms found in the bin and all three tests indicated positive for heroin. The second container held a Royal Sovereign money counter and materials that, based on my experience and training, are used to package narcotics and/or drug proceeds. Agents also found and seized a bag filled with empty packaging material in the closet within the same room. Based on my training and experience, the packaging material is the kind used to package narcotics and/or drug proceeds. In Vazquez-Ramirez's room, Agents also found and seized a semi-automatic pistol and magazine containing ammunition for the gun.

### Conclusion

Based on the foregoing, Affiant respectfully submits that there is probable cause to believe that Jesus Ivan Vazquez-Ramirez possessed with intent to distribute a controlled substance, namely,

in excess of one kilogram of substances containing heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER Affiant SAYETH NOT.

Donald C. Wood
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me,
This 14th day of May, 2008

UNITED STATES MAGISTRATE JUDGE